SO ORDERED.

Dated: November 21, 2023

Daniel P. Collins, Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re | ) | Chapter 11 Proceedings |
| | ) | |
| Legacy Cares, Inc., an Arizona non-profit corporation, | ) ) ) | Case No: 2:23-bk-02832-DPC |
| | ) | Adversary No. 2:23-ap-00186-DPC |
| Debtor. | ) | |
| | ) | |
| OVG Facilities, LLC, | ) | **UNDER ADVISEMENT ORDER REGARDING DEBTOR'S MOTION TO DISMISS** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Legacy Cares, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is the Motion ("Motion") of Defendant Legacy Cares, Inc. ("Debtor") to Dismiss Adversary No. 2:23-ap-00186-DPC (the "Adversary Proceeding") with prejudice. The Motion advances three arguments: First, that the personal property at issue cannot be the property of Plaintiff, OVG Facilities, LLC ("OVG"), because a stipulation between OVG and certain defendants in pre-bankruptcy litigation acknowledged OVG's $3 million "capital contribution" to Legacy Sports ("Sports") "was used to defer costs previously expended for items" to acquire such personal property; second, that OVG's claims are barred by the Arizona Statute of Frauds; and third, that the

operating agreement between OVG and Sports[1] is a disguised financing agreement which was not properly perfected. For the reasons stated below, the Court rejects Debtor's first and second arguments but grants the Motion based on its third argument. This Adversary Proceeding is, therefore, dismissed with prejudice without leave to amend.

I.     ANALYSIS

When considering a defendant's motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure[2] the Court must accept the allegations of the complaint as true. The Debtor correctly points out that the Court may also consider matters properly presented to the Court, such as attachments to a plaintiff's complaint.

A.     **Debtor's First Argument – The Personal Property Cannot Belong to OVG.**

The Court first considers Debtor's argument that OVG's Complaint[3] must be dismissed because the $3 million "capital contribution"[4] from OVG to Sports was not to be used to purchase assets but, rather, was only to "defer costs previously expended [by Sports] for **such items**[5] as food truck(s) from Stradabella Custom Kitchens, VIP entertainment trailers from Party Shack, a modular trailer that housed Plaintiff's employees during construction from Design Space, and kitchen equipment purchased from Shamrock Foods."[6]

---

[1] The "Operating Agreement," see DE 1-1, Ex "A," pages 35 of 62 through 62 of 62.
[2] This Rule is made applicable to this Adversary Proceeding pursuant to Bankruptcy Rule 7012.
[3] DE 1.
[4] The $3 million "capital contribution" together with another $1 million contemplated but never made by OVG are collectively defined in ¶ 9.3(a) of the Operating Agreement as the "Investment." The Court will use the terms "capital contribution" and "Investment" interchangeably. Both of these terms suggest OVG was taking an equity stake in Sports and that, if it was not able to enjoy its ability to operate Sports' or the Debtor's business for 20 years, it would be entitled to damages spelled out in the Operating Agreement.
[5] Emphasis added. The Court shall refer to "such items" collectively as the "Personal Property."
[6] See the Stipulated Motion to Vacate Evidentiary Hearing ("Stipulated Motion") filed in the Arizona Superior Court, County of Maricopa ("State Court") on July 10, 2023, at Case No. CV2023-006590 ("State Court Action") and in this Adversary Proceeding at DE 13 and in the administrative case of Debtor at DE 602-1, Ex A.

OVG argues that facts to be developed in discovery in this Adversary Proceeding may reveal that some or all of the $3 million transferred by OVG to Sports was actually used to "purchase" some or all of the Personal Property. If so, OVG contends that, under ¶ 9.3(b) of the Operating Agreement between OVG and Sports, such Personal Property "shall be owned by" OVG. Additionally, OVG suggests that the Stipulated Motion does not preclude the possibility that Sports may have incurred "costs previously expended for" some or all of the Personal Property but title to such Personal Property may not have passed to Sports until after OVG made its "capital contribution" to Sports. In other words, it may have been the OVG money that completed the purchase of the Personal Property or that it was not until after the arrival of OVG's money that title passed from the Personal Property transferor to the purchaser and that OVG, not Sports, became that purchaser.

In resolving Debtor's Motion, the Court need not determine when Sports incurred liability for the Personal Property or when Sports transferred money to the Personal Property transferor or when OVG's "capital contribution" was received by Sports or when title to the Personal Property passed from the transferor or to whom that title transferred and when. Discovery might resolve some or all of these questions, but the language of the Stipulated Motion does not and many fact issues remain. For purposes of resolving the Motion, the Court need only accept as true the allegations at ¶¶ 18 and 19 of OVG's Complaint, which state:

> 18. In the State Court Action, Sports identified certain items purchased or paid for with the Investment, such as food truck(s) from Stradabella Custom Kitchens, VIP entertainment trailers from Party Shack, a Modular trailer that housed OVG's employees during construction from Design Space, and kitchen equipment purchased from Shamrock Foods (the "OVG Assets").
>
> 19. Pursuant to the express terms of the Operating Agreement, OVG holds title to "[a]ll equipment, improvements and other items purchased with the Investment, including any replacements or substitutions thereof" until payment of the Investment Buyout Amount. Id.[7]

---

[7] DE 1, page 3.

The Stipulated Motion may shed light on a number of important decisions that could face the Court concerning the relationship of or transactions concerning OVG and Sports but, the Stipulated Motion does not preclude the possibility that some of OVG's "capital contribution" to Sports may have been used to complete Sports' intended purchase of some or all of the Personal Property. For these reasons, the Court rejects Debtor's argument that this Court must conclude at this stage of the litigation that OVG does not have and cannot have title to any of the Personal Property.

**B.  Debtor's Second Argument – The Arizona Statute of Frauds Bars OVG's Claims.**

Debtor's second argument is that the Arizona Statute of Frauds[8] applies where a buyer does not receive goods and there is no writing for the sale of goods over $500. At oral argument, OVG conceded that it does not contend it obtained from either Sports or Debtor title to any of the Personal Property. OVG contends it obtained title to the Personal Property when some of its "Investment" was used to acquire that Personal Property. Since OVG does not contend it acquired any of the Personal Property from Sports or the Debtor, the Court agrees the Arizona Statute of Frauds does not apply to this transaction.

**C.  Debtor's Third Argument – OVG is an Unperfected Lienholder in Its Secured Transaction with Sports.**

Debtor's third argument contends that, at best, OVG might have a security interest in the Personal Property, but that security interest was not perfected and is now defeated by the strong-arm powers afforded a debtor-in-possession under 11 U.S.C. § 544(a) and, in any event, would be junior to the properly perfected liens of UMB.

For its part, OVG argues it has title to the Personal Property, that the Personal

---

[8] A.R.S. § 44-101(4).

Property was never transferred by OVG to Sports or anyone else, that a secured transaction with Sports was never intended (objectively or subjectively)[9] by either Sports or OVG, that a lease of the Personal Property was never contemplated by the parties, that the parties did not contemplate a sale of the Personal Property from OVG to Sports or the Debtor, and that the Operating Agreement simply identifies the calculation of OVG's liquidated damages should Sports default on the Operating Agreement. OVG contends it owns the Personal Property and it must be turned over to OVG since Sports defaulted on the Operating Agreement no matter what the value of the Personal Property may be today.

OVG urges a two-step analysis here. First, OVG would have an objective standard applied to the intent of the parties. Second, it would apply a subjective analysis as to whether the parties intended to create a secured transaction. The Operating Agreement does not call OVG's transaction with Sports a secured transaction but, of course that does not resolve the question of whether Article 9 of the UCC applies. While the Operating Agreement does not overtly denominate the parties' transaction as creating a secured transaction, it does call for execution of financing statements[10] and it does call for payment of interest upon a payment default.[11] Financing statements reflect existence of a security interest in favor of a creditor in personal property held by the obligor. Additionally, contractually charging interest on an unpaid obligation looks and smells like a loan or the creation of an obligation to OVG by Sports.

Here, the Operating Agreement specifies Arizona law is applicable to the parties' contract.[12] Arizona has adopted Article 9 of the Uniform Commercial Code. A.R.S. § 47-9202 tells us that the provisions of Article 9 apply "with regard to rights and

---

[9] OVG does not contend it ever took possession of any of the Personal Property. See DE 9, p. 3. Possession of the Personal Property appears to have been, at all relevant times, in the hands of the Debtor or Sports or Sports' successor, Elite. OVG never possessed or had a right to possess the Personal Property unless or until Sports defaulted on its obligations under the Operating Agreement (see ¶ 9.3(c), page 48 of 62, DE 1-1 Ex "A").
[10] Operating Agreement at ¶ 9.3(b), page 48 of 62, DE 1-1 Ex "A."
[11] Operating Agreement at ¶ 9.3(c), page 48 of 62, DE 1-1 Ex "A."
[12] See Operating Agreement, ¶ 18.10, page 55 of 62, DE 1-1 Ex "A."

obligations . . . whether title to the collateral is in the secured party or the debtor." In other words, a creditor cannot escape the reach of Article 9 simply by retaining title to the property until the debtor repays its debt to that creditor. This is exactly the lesson learned from the Arizona Court of Appeals in a case cited by Debtor[13] where the Court held that a "seller who delivers goods but retains title holds a security interest."[14] The facts of *Security Pacific* are admittedly quite different than the case at bar. The litigants' battle in *Security Pacific* centered on whether a transaction was a sale or a secured transaction. Because title to a vehicle was to be held by the creditor (Security Pacific) until full payment was made to it by the obligor, the court found that transaction created a security interest. Here, if OVG acquired title to some or all of the Personal Property (and it is a hotly contested factual issue whether OVG did acquire title or as to what Personal Property it did acquire title) it is nevertheless objectively clear from the Operating Agreement that, once Sports' obligation to OVG was fully amortized over the 20 year term of the Operating Agreement, OVG was obligated to transfer title to Sports of all the Personal Property. There was no residual payment for the fair value of the Personal Property at the end of the payment terms. It was to be simply a matter of transferring title when the 20-year amortization was completed or payments were fully made by Sports. The Operating Agreement objectively reflects the parties' transaction to be a secured transaction. There is no reason for this Court to entertain evidence as to the subjective interest of the parties on this score. The parties' transaction was a secured transaction.[15]

OVG failed to satisfy several requirements to properly perfect its lien on the Personal Property. Specifically, OVG's collateral (the Personal Property) was not

---

[13] *Security Pacific Bank v. Cory Investments, Inc.*, 885 P.2d 194 (Ariz. App. 1994)
[14] *Id*. at 196.
[15] Interestingly, the Operating Agreement does not call for OVG to pay any taxes associated with the Personal Property or to acquire insurance coverage on the Personal Property. If any taxes were due or any insurance was to be acquired that was presumably something for Sports or the Debtor to satisfy. This fact suggests outright ownership of the Personal Property by Sports and not OVG.

described in a security agreement[16] and a UCC-1 financing statement (contemplated by ¶ 9.3(b) of the Operating Agreement) was never prepared much less signed and filed with the Arizona Secretary of State. OVG's unperfected security interest in the Personal Property is defeated by the debtor-in-possession's strong-arm powers found at 11 U.S.C. § 544(a). OVG's interests may well also be junior to UMB's claimed secured interests in the Personal Property (as Debtor contends) but that issue need not be resolved by this Court.

## II. CONCLUSION

For the reasons stated above, the Debtor's Motion is granted. The Adversary Proceeding is hereby dismissed with prejudice. Leave to amend the Complaint is denied as no new language in a complaint amended by OVG could escape the Court's conclusion that, whether OVG owned the Personal Property or not, it cannot obtain turnover of any of the Personal Property because OVG's secured interests are unperfected and are defeated by the hypothetical lien created by 11 U.S.C. § 544(a).

**DATED AND SIGNED ABOVE.**

**To be Noticed through the BNC to** Interested Parties

---

[16] Even OVG acknowledges its Personal Property has not been and so far, cannot be accurately disputed. See DE 9, page 1.